CLIFFORD F. CHAPMAN, PLAINTIFF-APPELLANT, v. JOHN J. NEWMEYER, DEFENDANT-APPELLEE.

Submitted October 4, 1938—Decided November 17, 1938.

Before Justices TRENCHARD, PARKER and PERSKIE.

For the appellant, *Heuser & Heuser* (*Ralph S. Heuser*, of counsel).

For the respondent, *Snyder, Roberts & Pillsbury*.

The opinion of the court was delivered by

PARKER, J. The suit is by an assignee of the claim in question.

The trial judge nonsuited after hearing plaintiff's evidence, and the appeal is from that nonsuit, the sole ground of appeal being that there was error in awarding such nonsuit.

The factual situation as developed by the evidence is substantially as follows:

The plaintiff's assignor, who for convenience will be called herein the plaintiff, and the defendant were both real estate brokers occupying the same office, but not in partnership, each acting independently of the other. The plaintiff had as a client a man named Austin Ely, who was the owner of a seventy-acre farm and wished to sell it. There was some incidental difficulty with the title, which was cleared upon foreclosure and sale made by the sheriff to George Ely. George Ely listed the property with the plaintiff for sale at the price of $1,100 notwithstanding the fact that plaintiff had told him that he, the plaintiff, had a buyer for thirty-five acres of the seventy for $1,000. It was obvious that plaintiff had the opportunity of a considerable profit by advancing the other $100 to George Ely, selling the thirty-five acres for

$1,000 to the purchaser, whose name was Kalmen, and holding the other thirty-five acres in reserve for sale to reimburse him for the $100 advanced and his profit on the transaction. But the plaintiff testified that he did not have the $100 and spoke of the matter to the defendant who, according to plaintiff's testimony, said that if the plaintiff could get the title to the other thirty-five acres for him, the defendant, he would pay the plaintiff half of the net proceeds of the sale thereof when made. All this appears to have been before the sale of the first thirty-five acres had been completed. The plaintiff saw Ely and told him about this arrangement. Ely expressed himself as satisfied, so the plaintiff reported to the defendant that the transaction could be carried out as proposed. It was therefore arranged that Ely was to execute two deeds, one to the plaintiff's purchaser, Kalmen, for $1,000, and the other to the defendant, who paid the other $100 and the cost of a survey. The $100 was raised by a note of the defendant endorsed by the plaintiff, though perhaps this is not material. It is also in evidence, though probably not material, except as a matter of evidence of the progress of the matter, that the other deed was in the name of the defendant as grantee, but that the name of the grantee was changed, allegedly with the consent of the grantor (and to avoid the expense of drawing and recording a second deed from defendant) to that of a purchaser for the other half, such purchaser having been secured by the plaintiff, his evidence being that he sold this other half to one Millich for $1,200. This sale was consummated, the deed delivered, and the money paid. Plaintiff was the moving cause of the sale to Millich. Assuming the truth of this evidence, as of course we must do on motion to nonsuit, it indicates the general situation that the defendant and plaintiff agreed that if plaintiff could procure the title of the second thirty-five acres for the defendant, the defendant would pay the plaintiff half the net proceeds of any subsequent sale thereof; that plaintiff did procure such title for the defendant at a cost, the total amount of which was disputed, but which, of course, included the extra $100 and the $25 for survey, and perhaps other items not now material;

that defendant sold the property acquired by him for $1,200; and the plaintiff's claim was for one-half the net excess of the proceeds of sale over the cost of acquisition.

It was in evidence that when defendant and Millich were negotiating with regard to the sale, Millich wanted three acres which plaintiff urged defendant to waive, plaintiff saying that defendant knew he wanted his money.

Millich, also called as a witness, said that defendant said to him that he was trying to settle with the plaintiff for $150 or $200; Millich testified also that defendant was pressing Millich for more cash on the purchase because "he had to give the other fellow part of it."

The nonsuit was put on the sole ground that the transaction was a joint venture; and that it was therefore within the statute of frauds and not in writing.

The case is submitted on briefs and we have only the brief for the appellant. After a careful reading and consideration of the evidence, we conclude that the nonsuit was erroneous. It was open to a jury, or to the judge sitting as a jury, to find on the plaintiff's case that the plaintiff's assignor was employed by the defendant to procure for the defendant a piece of property and was promised a definite compensation for so doing, the compensation being, of course, speculative, but nevertheless a compensation. If the defendant had said to the plaintiff, "if you can procure title to this thirty-five acres for me, and do so, I will pay you $200," there can be no question but that plaintiff was the agent of the defendant at a stated and agreed compensation. *Conklin* v. *Kruger,* 79 *N. J. L.* 326. We see no legal distinction between such a case and a case where the defendant says to the plaintiff, "if you can buy this thirty-five acre property for me at a satisfactory price for the purpose of resale by me, and will do so, I will pay you one-half of any profit made by the resale." The latter seems to have been in effect the factual situation. The fact that the entire farm of seventy acres was purchased for $1,100 and was paid for by the defendant, and the other half sold for $1,000 to the plaintiff's purchaser, does not affect the substance of the transaction; for what seems to have hap-

pened was that, as a result of this manipulation, the defendant acquired the land that he wanted at an expense of $100 in cash and some other incidental items of expense, and later sold it at a considerable advance over what it had cost. Plaintiff's work was done when the title to the second thirty-five acres was vested in the defendant or his nominee. Under the terms of the agreement plaintiff was to wait for his compensation until the defendant resold; but when the defendant did resell, the plaintiff's claim matured and was in effect a commission of fifty per cent. of the net profit.

We conclude that the judgment must be reversed, and the case remanded for a new trial, costs to abide the event.